JOURNAL ENTRY and OPINION.
{¶ 1} Defendant-appellant Harvey H. Starkoff appeals two domestic relations orders awarding plaintiff-appellee Phyllis J. Jacobson, fka as Starkoff, his financial interest in a corporation and awarding her attorney fees. We dismiss the appeal in part and affirm in part.
 {¶ 2} Starkoff and Jacobson were divorced on September 11, 1991. Pursuant to the divorce decree, Jacobson agreed to give Starkoff her interest in a 1986 Mercedes Benz in exchange for his interest in VIP Motor Lodge, Inc. ("VIP"), which represented a one-third interest in the property. VIP is a corporate entity that controls property ("the property") on which a Burger King restaurant is located.
 {¶ 3} When it became apparent that Starkoff was not going to transfer his one-third interest in VIP to Jacobson, she filed a motion to show cause, motion to transfer equitable interest in VIP and successor entities/corporations, and a motion for attorney fees.
 {¶ 4} A hearing regarding the motions to show cause and to transfer the equitable interest was held on October 26 and 27, 1999. Starkoff testified that, although he agreed in the divorce decree to give Jacobson his interest in VIP in exchange for the Mercedes Benz, he in fact had no interest in VIP. He testified that in 1996, he formed Krestt Corporation ("Krestt") with Joseph Tenebria, and Tenebria's brother-in-law, Joseph Krivanek. Krestt was formed by having VIP quitclaim title to the property to Krestt. Each partner, including Starkoff, then paid $1,000 for 100 shares of stock in Krestt. In addition, Starkoff received a $60,000 note payable to him from Krestt. Each of the two remaining partners also received $60,000 notes from Krestt. However, Starkoff testified that his note represented payment for past legal services he performed for VIP, while the other two partners' notes represented their purchase of the property. Starkoff had no billing statements to support this contention and claimed that he never issued billing statements to clients.
 {¶ 5} Starkoff continued to deny that he ever had an interest in VIP, even though he prepared a 1985 financial statement for a loan in which he stated that he had an interest worth $30,000 in VIP. Starkoff claimed that the financial statement was inaccurate. In various court pleadings during the divorce, he also represented that he had an ownership interest in VIP.
 {¶ 6} Joseph Tenebria, one of the partners of Krestt and former partner of VIP, testified that Starkoff was given an ownership interest in VIP for dealing with one of the former partners with whom VIP was having problems. According to Tenebria, he and Starkoff and Krivanek each owned a one-third interest in VIP. Tenebria could not explain why Starkoff received a $60,000 promissory note from Krestt.
 {¶ 7} Ben Tenebria, the son of Joseph Tenebria, and treasurer of Krestt, testified that Starkoff had been the attorney for VIP and VIP owed $60,000 in legal fees to Starkoff. According to Tenebria, Krestt was formed in 1996, once VIP began producing income. He stated that Krestt was a successor corporation to VIP. He claimed that Starkoff had no equity in VIP but became a partner in Krestt by paying $1,000 for 100 shares. According to Tenebria, Krestt executed a note payable to Starkoff for attorney fees he incurred on behalf of VIP. The other two partners also received $60,000 notes to compensate them for payment of the real property, which Tenebria estimated was valued at $120,000. This was in spite of the fact that expert testimony during the divorce proceedings valued the property at twice that amount.
 {¶ 8} On December 10, 1999, the trial court granted Jacobson's motions and ordered Starkoff to immediately transfer his ownership interest in Krestt, which it found to be the successor corporation of VIP, along with his stock shares in the corporation. He was also ordered to transfer the $60,000 note from Krestt.
 {¶ 9} In addition, the trial court found Starkoff in contempt for failing to comply with the divorce decree. As a result, he was sentenced to ten days in jail, which could be purged by complying with the court order. The trial court also found that Jacobson's motion for attorney fees "shall be set for further hearing."
 {¶ 10} Jacobson filed an appeal from this order on December 22, 1999, in appellate Case No. 77418. However, this court dismissed the appeal due to Starkoff's failure to file the record. Jacobson did not attempt to reinstate the appeal.
 {¶ 11} On November 14, 2001, a hearing was conducted on Jacobson's motion for attorney fees. On January 5, 2002, the trial court awarded Jacobson $17,151.25 in attorney fees and $214.75 in costs.
 {¶ 12} Starkoff now appeals from both judgments.
 Jacobson's Interest in Krestt Enterprises, Inc. {¶ 13} In his first two assignments of error, Starkoff appeals the December 1999 order. He argues that the trial court abused its discretion by awarding Jacobson an interest in Krestt along with the $60,000 promissory note, and that the award was against the manifest weight of the evidence.
 {¶ 14} Before addressing the merits of these assignments of error, we must determine if this court has jurisdiction to review the appeal of the December 1999 order.
 {¶ 15} Starkoff originally appealed the December 1999 order in appellate Case No. 77418, which was dismissed by this court for Starkoff's failure to file a record. No motion to reinstate the appeal was ever filed. This court does not have jurisdiction to vacate its own judgment entry of dismissal and belatedly reinstate the former appeal. Wilner v.State Farm Mutual Auto. Ins. Co. (Feb. 13, 1997), Cuyahoga App. No. 70720. Therefore, if the prior appeal was an appeal from a final order, this court has no jurisdiction to consider the arguments regarding the December 1999 order.
 {¶ 16} A contempt ruling is a final order once there is a finding of contempt and the imposition of a penalty or sanction such as a jail sentence or fine. Chain Bike v. Spoke N' Wheel, Inc. (1979),64 Ohio App.2d 62, 64. The trial court found Starkoff to be in contempt and imposed a penalty of ten days in jail with the opportunity to purge the contempt by complying with the court's order. Therefore, the December 1999 order was final as to the contempt action. Starkoff, however, maintained at oral argument that because the trial court failed to rule on Jacobson's motion for attorney fees incurred in prosecuting the contempt action, the December 1999 order was not final.
 {¶ 17} A judgment entry which defers the amount of attorney fees to be awarded until a later date is not a final appealable order. Ft.Frye Teachers Assn. v. Ft. Frye Local School Dist. Bd. of Edn. (1993),87 Ohio App.3d 840. However, when a penalty has been imposed for the contempt, separate from the attorney fees, the contempt motion is final even though the attorney fees incurred in bringing the motion were to be determined at a future date. See, Smith v. Smith (Jan. 13, 1994), 10th Dist. No. 93AP-958. We therefore lack jurisdiction to review the December 1999 order.
 {¶ 18} If we had jurisdiction to consider the matter, we would find the trial court did not abuse its discretion in holding Starkoff in contempt and further find that the court's decision was not against the manifest weight of the evidence. The evidence showed that Starkoff indicated to the court several times during the divorce action that he owned an interest in VIP; he prepared a 1985 financial statement for a loan representing he had such an interest; Joseph Tenebria testified that Starkoff had a one-third interest in VIP; Starkoff had no documentation to support his contention the $60,000 note was for legal fees; and, coincidentally, the other two partners also received $60,000 notes from Krestt.
 {¶ 19} We lack jurisdiction to review Starkoff's first and second assignments of error. Accordingly, his appeal of the December 1999 order is dismissed, in part.
Attorney Fees
 {¶ 20} In his third assignment of error, Starkoff appeals the trial court's January 5, 2002 order, awarding attorney fees to Jacobson for fees incurred in bringing the motion to show cause. He argues the award was in error because the trial court failed to ascertain Starkoff's ability to pay the fees.
 {¶ 21} On November 14, 2001, the trial court conducted a hearing regarding Jacobson's request for attorney fees incurred in prosecuting the motion to show cause. Jacobson requested the amount of $22,366 for fees and costs of $214. She included an itemized statement supporting the attorney fees as an exhibit. Her attorney testified to the difficulties he encountered in the case due to Starkoff's resistance and various strategies Starkoff employed to defeat the motion. Jacobson's attorney also testified that he believed both parties, given their economic positions, had the ability to pay the fees. No evidence contrary to this statement was presented.
 {¶ 22} The trial court subsequently awarded Jacobson attorney fees in the amount $17,366, and $214.75 for costs.
 {¶ 23} An award of attorney fees in post-decree domestic relations proceedings is within the sound discretion of the trial court. Rand v.Rand (1985), 18 Ohio St.3d 356, 359. "The term `abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 24} R.C. 3105.18(H) provides:
 {¶ 25} "(H) In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. * * *"
 {¶ 26} Therefore, R.C. 3105.18(H) directs the court to consider whether the party has the ability to pay the attorney fees. The trial court in the instant case made no finding as to Starkoff's ability to pay the fees. However, as this court acknowledged in Deegan v. Deegan (Jan. 29, 1998), Cuyahoga App. No. 72246:
 {¶ 27} "Under limited circumstances, the court may use its own knowledge and experience in determining the reasonableness of attorney fees. See, Goode v. Goode (1991), 70 Ohio App.3d 125, 134, 590 N.E.2d 439. We think that knowledge extends to the financial positions of the parties, particularly in a case such as this when the substantial assets of the parties are apparent on the record and clearly indicate the husband had the ability to pay the attorney fees. Indeed, husband wisely makes no direct argument that he could not personally afford to pay the attorney fees."
 {¶ 28} Likewise, in the instant case, it is apparent from our review of the entire record, that Starkoff has the ability to pay the amount. Jacobson's counsel also testified that he believed that Starkoff had the ability to pay the amount. Starkoff presented no evidence to rebut this statement.
 {¶ 29} Furthermore, like the appellant in Deegan, supra, Starkoff does not contend that he, in fact, cannot pay the amount.
 {¶ 30} Starkoff's third assignment of error is overruled.
 {¶ 31} Starkoff's appeal is dismissed in part and affirmed in part.
This court finds there were reasonable grounds for this appeal. It is, therefore, considered that said appellant and appellee each pay one-half of the costs herein.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, P.J. and TERRENCE O'DONNELL, J. CONCUR.